United States District Court
For the District of Columbia

| | |
|---|---|
| Sealift, Inc.<br>68 West Main Street<br>Oyster Bay, NY  11771,<br>    Plaintiff,<br><br>v.<br><br>Rear Admiral Robert D. Reilly Jr.,<br>Commander,<br>Military Sealift Command<br>Department of Navy<br>914 Charles Morris Court, SE<br>Washington Navy Yard<br>Washington, DC  20398<br><br>    and<br><br>United States of America<br>US Attorney General<br>950 Constitution Ave., NW<br>Washington, DC 20530,<br>    Defendants. | Civil Action No. |

## Complaint

This is an action for equitable and declaratory relief brought by Plaintiff Sealift, Inc. against Defendant Rear Admiral Robert D. Reilly Jr. in his official capacity as Commander of the Military Sealift Command ("MSC"), an operating activity of the Department of Navy, and the United States of America to redress final agency actions that were arbitrary, capricious, not in accordance with law and to obtain review of unauthorized agency actions. These actions of MSC have violated Plaintiff's rights under Administrative Procedure Act, 5 U.S.C. Section 702 *et seq.*, the Cargo Preference Act of 1904, as amended, 10 U.S.C. Section 2631, the Suits in Admiralty Act, 46 U.S.C. Section 30901 *et seq.*, 28 U.S.C. Section 1331, and 28 U.S.C. Section 2801.

**Jurisdiction**

1. Jurisdiction and venue is properly lodged with this Court under, 28 U.S.C. Section 1331 (federal question), 28 U.S.C. Section 1333 (maritime jurisdiction), 28 U.S.C. Section 2801 (declaratory judgment), 5 U.S.C. Section 706 (APA) and 46 U.S.C. Section 30901 (suits in admiralty). This action arises out of a solicitation for a maritime contract, the time charter of a vessel to be operated in the foreign trade.

2. Venue for this action is properly lodged in the United States District Court for the District of Columbia under 5 U.S.C. Section 703 and 28 U.S.C. Sections 1331, 1333 and 1391.

**Parties**

3. Plaintiff Sealift, Inc., a company organized under the laws of New York with offices in Oyster Bay, New York, is an operator of twelve US flag vessels operating in the international trade.

4. Defendant Rear Admiral Robert D. Reilly Jr., the Commander of MSC, is sued in his official capacity. MSC is an operating unit of the Department of Navy with its principal offices located at the Washington Navy Yard in Washington, DC. MSC is the operating activity of the Department of the Navy charged with the acquisition of vessels and other maritime assets for the use and support of the Navy and other military departments.

## Actions Complained of

5. In Solicitation N 00033 – 06 – R – 5409 dated 31 March 2006 ("Solicitation"), MSC sought offers under a negotiated procurement for the time charter of a tank vessel for operations in the Pacific beginning in October 2006 for a base period of one year with three one year options and one 11 month option period. A time charter is a service contract in which the contractor is responsible for operating the vessel including engaging the crew and maintaining and navigating the vessel in accordance with the direction of MSC. Fuel under a time charter is an expense of the vessel operator that is reimbursed by the time charterer (*i.e.,* by MSC in the case of the Solicitation).

6. The Solicitation sought detailed information on the size, draft, pumping capacity, configuration, fuel consumption, and other particulars of the vessels offered. Reflagging or repair work to enable the vessel to meet the US flag registration requirements and to meet military standards was required to be performed in the United States pursuant to the Solicitation, applicable regulation and the Cargo Preference Act of 1904, as amended, 10 U.S.C. Section 2631. Award was to be based on price only based on the cost of the charter hire rates on the "entire charter period (including options), cost of fuel, and any other costs set forth in the offer." Solicitation, pg. XI-1. Fuel price conversion factors were specified for various types of marine fuel. *Id.*

7. MSC has had a continuing requirement for this service for the last decade or more. Sealift has been the continuous incumbent contractor during that time most recently with its vessel the *Montauk*.

8. In March 2006 Sealift submitted a timely, responsive offer of its vessel the *Montauk* in response to the Solicitation.

9. TransAtlantic Lines LLC ("TAL"), which had never operated a tank vessel, submitted an offer while in possession of significant confidential information about Sealift's vessel characteristics and costs owing to disclosures by MSC in connection with a 2005 solicitation. In February 2005, MSC issued a solicitation for a long-term tanker charter contract. After award was made to Sealift in June of 2005, TAL protested the award to the Government Accountability Office in June 2005. In connection with the GAO protest, MSC provided TAL with a spread sheet including evaluation of the financing and fuel calculations relating to *TAL's offer*. MSC inadvertently also attached a spread sheet containing financing and fuel calculations relating to *Sealift's offer*. TAL could have noted the mistake in the tabs provided with the spread sheets and declined to review the information regarding Sealift that it knew it should not have been provided. Instead, TAL chose to take commercial advantage of MSC's mistake and used the ill-begotten information as the basis for its GAO protest. MSC, after inviting submissions from parties as to how to remedy the error, decided to disclose to Sealift information relating to TAL's offer in an attempt to equalize the advantages of the offerors. TAL lost control of the vessel it had offered originally, although it had represented it was the vessel "owner" to MSC, and proved unable to secure another vessel in the intervening time. Accordingly, Sealift was awarded a contract for nine months in late 2005.

10. On or about June 23, 2006, MSC made award of the time charter to TAL under the Solicitation.

11. Sealift protested the award to the Government Accountability Office on August 7, 2006. On October 17, 2006, GAO dismissed Sealift's protest.

12. On or about November 10, 2006, TAL tendered its vessel *Bonito,* which had been renamed the *Transatlantic* when it was reflagged to US registry in late October 2006, in Japan. On or about November 19, 2006, MSC took delivery of the TAL vessel *Transpacific* under the contract.

13. TAL failed to deliver the *Transpacific* by the November 1, 2006 canceling date specified under the Solicitation. MSC accordingly, extended the charter of the Sealift's vessel, the *Montauk,* to cover the gap in service.

14. On or about November 22, 2006 Sealift's vessel, the *Montauk,* which had been providing the service under the 2005 contract award, including extensions, was taken off hire by MSC. Sealift was and is ready, willing and able to provide the service under the Solicitation in accordance with its offer.

15. The primary elements of the total cost of the Government on the Solicitation for time charter were the daily charter hire rate, which could vary by year, and the fuel consumption. The daily hire rate incorporated the costs of crewing, operation, insuring, and financing the vessel. Under the Solicitation, the time charterer, MSC, pays for the fuel for the term of the charter. In this case the Solicitation contemplated that the Government would ordinarily supply the fuel itself to the chartered vessel or, on occasion, reimburse the owner for the fuel.

16. TAL offered a time charter hire rate that was very close to Sealift's owing to the benefit of the confidential information provided to TAL by MSC in 2005.

17. The cost evaluation of the fuel consumption was the critical determinant of the cost evaluation in the award.

**Misrepresentation of Fuel Consumption Rate**

18. TAL's warranted fuel consumption rate for the *Transpacific* was materially inaccurate. If accurate fuel consumption for TAL's vessel had been used, Sealift's offer would have been lower than that of TAL and Sealift would have been awarded the contract.

19. Under the Solicitation, each offeror was required to warrant the fuel consumption of its vessel at 12 knots and the fuel consumption would be evaluated at costs specified in the Solicitation for each grade. The Solicitation provides at page II-7 that "[a]ll the fuel and speed characteristics provided in Part I shall be deemed warranties." Speed is defined in IV-4 as the rate derived from hours divided by distance "as shown in the Vessel's logs." The "cost of fuel" was to be evaluated in accordance with the prescribed scenario, 60% of the time underway laden at 12 knots using the information from Boxes 88 and 90 of the Solicitation, 28% in-port idle per Box 91a, and 12% in-port discharge per Box 91b. See Solicitation at pg. XI-1. Since the price of fuel and the speed were all fixed in the Solicitation, the only variable was the vessel fuel consumption rate underway.

20. The *Transpacific* has a nearly identical hull configuration, displacement and propeller arrangement as Sealift's vessel *Montauk*. Both vessels have B&W Alpha engines with the *Transpacific*'s 2720 KW being somewhat larger that the

*Montauk*'s 1966 KW. The larger engine on the *Transpacific* should have fuel consumption no less than that of the *Montauk*. Yet, according to the post-award debriefing information, TAL warranted its consumption at substantially less that of the *Montauk*.

21. The before the purchase by TAL the *Transpacific* [then the *Bonito*] was managed commercially by Nordtank Shipping A/S, who was identified as the commercial managers by the vessel owners' website. Nordtank Shipping published vessel particulars on their website showing "Speed / Consumption: 12,0 knots / 12 mts" for the *Bonito*. This datum is inherently reliable because it was intended for commercial charterers to use to evaluate the cost of the vessel.

22. Using the equivalencies in the Solicitation, TAL warranted a consumption rate of 31% less than the current commercial managers were advising the trade as the *Transpacific's* consumption at 12 knots.

23. Had the *Transpacific's* correct consumption rate been utilized, it would have increased TAL's offer by an amount sufficient to make its offer more costly than Sealift's.

24. The material misrepresentation of the TAL offer was patent and should have been clear to MSC. The material misrepresentation should have caused MSC to disqualify TAL's offer or, at a minimum, MSC should have used an accurate figure.

**Reflagging and Repairs of the *Transpacific* outside of the United States**

25. The Solicitation provided at page I-8 that " [a]ny reflagging or repair work to (1) enable the vessel to meet applicable standards to become a vessel of the United

States; or (2) to convert the vessel to a more militarily useful configuration must be performed in the United States." This requirement tracks the terms of 10 U.S.C. Section 2631(b) and implementing regulations. Further, Section 2631(b)(3) provides that the Secretary of Defense may waive the reflagging or repair requirements only if "the Secretary determines that such waive is critical to the national security of the United States." *Id.*

26. The *Bonito* was under Swedish registry until late October 2006. TAL took the *Bonito* to a shipyard in Singapore on or about October 2, 2006. The vessel was at the shipyard for more than one week during which time refitting of the fire protection system, deck welding and upgrading of certain piping work were done. The vessel had its $CO_2$ fire protection systems removed and upgraded with the assistance of Fire Protection Services, Inc. a Houston based company specializing in the conversion of vessels to US flag requirements.

27. The work conducted at the shipyard in Singapore constituted reflagging or repair work within the meaning of the Solicitation and 10 U.S.C. Section 2631.

28. The *Bonito* departed Singapore and arrived in Guam on Friday, October 20, 2006. On Monday, October 23, 2006 the *Bonito* was attached by judicial order at the request of a commercial creditor in connection with an account from another TAL vessel. During the time the vessel was arrested it was in the custody of a marshal or his designated agent. The attachment order was lifted on Friday, October 27, 2006. The vessel sailed from Guam bound for Japan on or about Monday, October 30, 2006. The vessel never entered a shipyard in the United States prior to delivery to MSC. The vessel had approximately nine days available for

reflagging or repair work to be done in Guam, counting the time the vessel was in the custody of the marshal, before it sailed for Japan.

29. Sealift advised MSC of some of the work done on the vessel in the shipyard in Singapore. MSC was also aware of the itinerary of the vessel as it was positioning for delivery under the contract. The fact that the *Bonito* never entered a US shipyard and was available for work in Guam for nine days, at most, including the time that the vessel was in custody, was so patent it should have caused MSC to demand specific confirmation of compliance with the US reflagging requirements of 10 U.S.C. Section 2631 noted above.

30. TAL's use of the shipyard in Singapore for reflagging and repair work was a material violation of the Solicitation and 10 U.S.C. Section 2631 which could not be waived and should have caused MSC to disqualify TAL and / or its vessel.

**Crewing Requirements**

31. TAL did not own or operate a tanker prior to the Solicitation so it had no current officers or crew experienced in the operation of tank vessels. Thus, as it has in the past, TAL will use a vessel managers or crewing agents to hire the crew and provide technical management services. Interposition of such a manager or agent as a subcontractor to engage the crew will mean that TAL will not itself have "appointed or hired" the officers and crew and that TAL would not expend at least 50 per cent of the costs of personnel for direct employees, not contract employees.

32. TAL wrongly warranted its ability to fulfill the crewing requirement of the Solicitation that "[t]he Master, Officers and crew of this Vessel shall be appointed or hired by the Owner," pg. III – 3, and that "[a]t least 50 percent of the cost of

contract performance incurred for personnel shall be expended for employees of the concern." See Solicitation VI-2.

33. The material misrepresentation of the TAL offer as to crewing was patent and should have been clear to MSC. The material misrepresentation should have caused MSC to disqualify TAL's offer.

**MSC Collective Waivers Granted to TAL**

34. MSC waived a number of other terms of the Solicitation such that the essential terms of the contract were modified for TAL.

35. Specifically, the Solicitation required that the vessel have vetting certificates from commercial petroleum refiners no less that 10 days prior to the canceling date. The TAL's vessel did not have any vetting certificated by October 21, 2006 or, indeed, by November 1, 2006, the canceling date. MSC declared repeatedly to each offeror that time was of the essence in the delivery schedule and that failure to deliver the vessel by the canceling date would result in cancellation of any award as permitted by the Solicitation. TAL failed to deliver the vessel by November 1. MSC waived the failure of TAL to meet the November 1, 2006 when it accepted the vessel later in the month. The Solicitation required each offeror to obtain a security clearance. At the time of its offer, TAL had a demonstrated inability to obtain a security clearance having failed to obtain one for more than 18 months under another defense contract. When in November 2006 the *Transpacific* first called a refinery in Korea, MSC permitted the vessel to call the commercial refinery there even though the vessel lacked the requisite vetting certificates as contemplated by the Solicitation. The Korean port state

authorities upon inspection of the *Transpacific* cited the vessel for inadequacies that were required to be remedied before the vessel may return to Korean waters.

## First Count (APA)

36. Each and every allegation of paragraphs nos. 1 to 35 is incorporated herein by reference.

37. The actions of MSC individually and collectively constituted material alterations of the Solicitation in violation of the terms of the Solicitation and the Federal Acquisition Regulations.

38. The actions of MSC were arbitrary, capricious and not in accordance with law or rule under 5 U.S.C. Section 706.

## Second Count (Cargo Preference Act of 1904)

39. Each and every allegation of paragraphs nos. 1 to 35 is incorporated herein by reference.

40. The actions of MSC individually and collectively constituted material alterations of the Solicitation in violation of the terms of the Solicitation and the Federal Acquisition Regulations.

41. The actions of MSC violated 10 U.S.C. Section 2631.

## Third Count (Suits in Admiralty Act)

42. Each and every allegation of paragraphs nos. 1 to 35 is incorporated herein by reference.

43. The actions of MSC individually and collectively constituted material alterations of the Solicitation in violation of the terms of the Solicitation and the Federal Acquisition Regulations.

44. The actions of MSC violated 46 U.S.C. Section 30901 *et seq.*

**Prayer for Relief**

For relief, Plaintiff requests an order:

>Declaring the actions of MSC to have been arbitrary, capricious and not in accordance with law;

>Directing that MSC set aside the award to TAL;

>Enjoining further performance by TAL under the contract;

>Awarding the contract to Sealift;

>Declaring the TAL not qualified as an offeror on the Solicitation; and

>Awarding reasonable attorneys fees and costs of this action and the protest to Plaintiff, as appropriate; and

>Such other relief as may be required in the interest of justice.

Respectfully submitted,

Timothy B. Shea
DC Bar No. 234005
Nemirow Hu & Shea
1629 K Street, NW Suite 500
Washington, D.C. 20006
Tel. No. (202) 835-0300
Facsimile No. (202) 835-0306

Constantine G. Papavizas
DC Bar No. 388403
Winston & Strawn LLP
1700 K Street, NW
Washington, D.C. 20006
Tel. No. (202) 282-5732
Facsimile No. (202) 282-5100

Attorneys for Sealift, Inc.

## I (a) PLAINTIFFS

SEALIFT, INC.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

REAR ADM. R.D. REILLY, JR.
COMMANDER, MILITARY SEALIFT COMMAND

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT

CASE NUMBER 1:06CV02110
JUDGE: Richard J. Leon
DECK TYPE: Contract
DATE STAMP: 12/12/2006

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

TIMOTHY A SHEA, NEMIROW HU & SHEA
1629 K ST., NW #500 WASHINGTON, DC

## II BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE FOR DEFENDANT

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ☐ A. Antitrust
☐ 410 Antitrust

### ☐ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review
☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

③

| ☐ G. *Habeas Corpus/2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☒ M. *Contract* | ☐ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☒ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC § 1331 and 1333.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: ☐ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES  ☒ NO   If yes, please complete related case form.

DATE 12/12/06   SIGNATURE OF ATTORNEY OF RECORD  /s/

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.