UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEALIFT, Inc.,                              )
                                           )
                    Plaintiff,             )
                                           )
          v.                               )      Civil  Action  No. 06-2110 (RJL)
                                           )
Rear Admiral Robert D. Reilly, Jr.,        )
  Commander,                               )
  Military Sealift Command,                )
  Department of Navy,                      )
                                           )
     and                         _____)
                                           )
United States of America,                  )
                                           )
                    Defendants._)
_____)

## DEFENDANTS' MOTION TO TRANSFER

Defendants Rear Admiral Robert D. Reilly, Jr., Commander, Military Sealift Command,

Department of Navy, and the United States of America move the Court, pursuant to Fed. R. Civ.

P. 12(b)(1) and 12(b)(3), for an order transferring this case to the United States Court of Federal

Claims ("COFC") under the provisions of 28 U.S.C. § 1631 to cure lack of jurisdiction.  Plaintiff

is a disappointed bidder and the gravamen of Plaintiff's Complaint is a bid protest.  This Court

lacks jurisdiction over such cases.  As explained in the accompanying memorandum, the

Administrative Disputes Resolution Act ("ADRA"), 28 U.S.C. § 1491(b)(1), subject to its

"Sunset Provision," ended district court jurisdiction over procurement protests in January, 2001;

now exclusive jurisdiction over bid protests rests with the COFC.

Pursuant to Local Rule 7(m), the undersigned counsel of record has conferred with

Plaintiff's counsel about the relief sought in this Motion.  Plaintiff opposes the requested relief.

Attached is a memorandum of points and authorities, with attached exhibit, and a proposed order.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Cara R. Conlin
Assistant Counsel
Department of the Navy
Military Sealift Command

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEALIFT, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil  Action  No. 06-2110 (RJL) |
| | ) |
| Rear Admiral Robert D. Reilly, Jr., | ) |
|  Commander, | ) |
|  Military Sealift Command, | ) |
|  Department of Navy, | ) |
| | ) |
|  and | ) |
| | ) |
| United States of America, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO TRANSFER

Defendants Rear Admiral Robert D. Reilly, Jr., Commander, Military Sealift Command, Department of Navy, and the United States of America move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3) for an order transferring this case to the United States Court of Federal Claims ("COFC") under the transfer provisions of 28 U.S.C. § 1631.[1]  The Tucker Act, as amended by the Administrative Dispute Resolution Act ("ADRA"), grants the COFC exclusive federal court jurisdiction over bid protests such as this one.  28 U.S.C. § 1491(b)(1).

---

[1] By operation of the filing of Defendant's Motion to Transfer this action to the COFC and pursuant to 28 U.S.C. §1292(d)(4)(B), "no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion."  28 U.S.C. §1292(d)(4)(B). That statutory provision also provides that if "an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit."  Id.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute stems from Solicitation No. N00033-06-R-5409 (the "Solicitation"), issued by the Military Sealift Command ("MSC"), a component of the Department of the Navy, on March 31, 2006, for the time charter of a tank vessel for operations in the Pacific. The Solicitation provided that the contract would begin during October, 2006 for a base period of one year, and allowed for three one-year option periods and one 11-month option period. Compl. at ¶ 5. In March, 2006, Sealift submitted an offer in response to the Solicitation. Compl. at ¶ 8. Under the Solicitation, MSC awarded Contract No. N00033-06-R-5409 (the "contract") to TransAtlantic Lines, LLC ("TAL") (a competitor of the Plaintiff). Compl. ¶ 10. Subsequently, Plaintiff filed a bid protest with the Government Accountability Office ("GAO") on August 7, 2006. Compl. at ¶ 11. Plaintiff argued to the GAO that TAL had understated its vessel's fuel consumption rate, thus warranting a rate lower than the actual rate for its offered vessel. Ex. 1 at 1-2 (GAO decision) attached hereto. GAO rejected Sealift's argument, finding that the accuracy of the warranties was irrelevant because TAL would only be paid at its warranted rate and because the contract provided for remedies for breach of the relevant warranties. Ex. 1 at 2. Sealift also argued that TAL misrepresented its ability to perform under the Solicitation's crew requirements. Ex. 1 at 2-3. The GAO found that the Solicitation did not require an offeror to provide a list of crew names, or otherwise to address how it will meet its crew needs, in connection with its offer under the Solicitation. Thus, Sealift's argument about crew needs was solely a matter of contract administration for MSC to consider in connection with actual performance of the contract. Ex. 1 at 3.

GAO denied Plaintiff's protest on October 17, 2006. Compl. at ¶ 11. See Ex. 1 at 1. In

2

an attempt to pursue these claims in a judicial forum, on December 12, 2006, Plaintiff filed its Complaint in this Court, which is based upon many of the same allegations, facts and circumstances as Sealift's protest before the GAO. Here, for example, Plaintiff raises the same arguments concerning TAL's fuel consumption warranty, Compl. at ¶¶ 18-24, and ability to meet the Solicitation's crewing requirements, Compl. at ¶¶ 31-33, that it raised in its protest before the GAO.

Plaintiff's Complaint itself makes clear that this lawsuit is, at bottom, a bid protest. Plaintiff's Complaint repeatedly states that the lawsuit "arises out of a solicitation." Compl. at ¶ 1. See also Compl. at ¶ 5 (identifying Solicitation), ¶¶ 6 et seq. (allegations concerning Solicitation). As a bid protest, subject-matter jurisdiction over Plaintiff's Complaint lies solely with the COFC. Accordingly, the Court should transfer the Complaint to the COFC under the transfer provisions of 28 U.S.C. § 1631.

## ARGUMENT

A.    Standard of Review.

"Jurisdiction must be established before a federal court may proceed to any other question." Galvan v. Fed. Prison. Indus., 199 F.3d 461, 463 (D.C. Cir. 1999). A court may not assume without deciding that jurisdiction exists because to do so exceeds the judicial power conferred under Article III of the Constitution. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Stewart v. Ashcroft, 352 F.3d 422, 424 (D.C. Cir. 2003).

A district court shall transfer an action to cure want of jurisdiction:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction,

3

> the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. Since this Court lacks subject matter jurisdiction over this lawsuit and the lawsuit could have been filed in the United States Court of Federal Claims, transfer of Plaintiff's Complaint to the COFC is "in the interest of justice."

Moreover, in reviewing a motion filed "under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the Plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted) (discussing motion to dismiss). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, Dep't. of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), affirmed, 346 F.3d 192 (D.C. Cir. 2003), cert. denied.

A court may resolve a motion under Rule 12(b)(1), which is usually styled as a motion to dismiss, in two ways. First, the court may determine the motion based solely on the face of the complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. See id. In doing so, "the Plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties." Erby v. United States, 424 F.Supp.2d 180, 181 (D.D.C. 2006) (internal quotations omitted); see also Mortensen v. First Fed. Sav. & Loan Ass'n, 549

4

F.2d 884, 891 (3d Cir.1976) (holding that a court ruling on a factual challenge to its jurisdiction is not required to accept the Plaintiff's factual allegations as true, but rather "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims").

B.    The Court Should Transfer this Case to the COFC.

Federal courts have limited jurisdiction, and are only capable of reviewing cases through grants of power contained in either the Constitution or in an Act of Congress.  Kenosha v. Bruno, 412 U.S. 507, 511 (1973).  It is well-settled that the United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584, 586 (1941).  See also United States v. Orleans, 425 U.S. 807 (1976); United States v. Testan, 424 U.S. 392, 399 (1976) ("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction . . . to entertain suits against the United States'") (quoting United States v. Sherwood, 312 U.S. at 587-88).  Plaintiff bears the burden of establishing that this Court has jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Since the gravamen of Plaintiff's Complaint is a bid protest, the COFC has sole jurisdiction over it.

1.    Transfer to the Court of Federal Claims Pursuant to 28 U.S.C. § 1631.

As noted, 28 U.S.C. § 1631 provides that "[w]henever a civil action is filed in a court . . . and that court finds that there is want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action" to any other such court in which the action could have been brought. The Administrative Disputes Resolution Act ("ADRA"), 28 U.S.C. § 1491(b)(1), expressly states

that the COFC shall have sole jurisdiction to render judgment on an action by an interested party objecting to the award of a contract or any alleged violation of statute or regulation in connection with a procurement. In short, pursuant to the ADRA, the COFC has exclusive jurisdiction over all contract procurement cases, including cases involving disappointed bidders.

Plaintiff's claim falls squarely under the jurisdiction of the COFC. Plaintiff is a disappointed bidder objecting to the award of Contract No. N00033-06-R-5409 to TransAtlantic Lines, LLC. Plaintiff is alleging violations of the terms of the Solicitation and violations of the Federal Acquisition Regulations. Compl. ¶¶ 36-44. This Court no longer maintains jurisdiction over bid protests. Therefore, pursuant to 28 U.S.C. § 1631, it is in the interest of justice that this action be transferred to the COFC as the only federal court with jurisdiction over it.

2.      The ADRA, Its Sunset Provisions and Bid Solicitation Cases.

In 1996, Congress enacted the ADRA, which amended the Tucker Act to give the COFC jurisdiction to consider pre- and post-award protests. 28 U.S.C. § 1491(b)(1). Novell, Inc. v. United States, 46 Fed. Cl. 601, 605 (Fed. Cl. 2000); Novell, Inc. v. United States, 109 F. Supp. 2d 22 (D.D.C. 2000). Prior to the ADRA, the COFC had been limited to considering procurement challenges filed before a contract was awarded. United States v. John C. Grimberg Co., 702 F.2d 1362, 1372 (Fed. Cir. 1983) (en banc). Prior to the ADRA, the federal district courts had enjoyed broader jurisdiction under the "Scanwell doctrine," which provided that the district courts could hear procurement challenges under the Administrative Procedure Act both before and after contract award. Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 861-73 (D.C. Cir. 1970). See also Free Air Corp. v. FCC, 130 F.3d 447, 450 (D.C. Cir. 1997); Int'l Eng'g Co. v. Richardson, 512 F.2d 573, 579 (D.C. Cir. 1979).

6

The ADRA provides:

> Both the Unties [sic] States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether the suit is instituted before or after the contract is awarded.

28 U.S.C. §1491(b)(1). See Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001). This provision allowed both the federal district courts and the COFC to hear "the full range of cases previously subject to review in either system." Id. (citing 142 Cong. Rec. §11849 (daily ed., Sept. 30, 1996) (statement of Sen. Levin)).

The ADRA, however, also included a "Sunset Provision," which terminated federal district court jurisdiction over all procurement protests on January 1, 2001. Pub. L. No. 104-320, § 12(d), 110 Stat. at 3875 (codified in note to 28 U.S.C. § 1491). The purpose of the Sunset Provision was to "channel the entirety of judicial government contract procurement protest jurisdiction to the Court of Federal Claims." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001). Senator Cohen, who offered the Sunset Provision, explained its purpose as follows:

> [The legislation] is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protest claims in the Court of Federal Claims. The [legislation] would reverse the decision of the D.C. Circuit in Scanwell . . . . Providing district courts with the jurisdiction to hear bid protest claims has led to forum shopping and the fragmentation of [g]overnment contract law. Consolidation of jurisdiction in the Court of Federal Claims is necessary to develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum. Congress established the Claims Court – now the Court of Federal Claims – for the specific purpose of improving the areas of . . . [g]overnment contracts . . . . Scanwell jurisdiction frustrates this

7

> purpose and deprives litigants of the substantial experience and expertise the
> Court of Federal Claims has developed in the [g]overnment contracting area.

142 Cong. Rec. S6156 (daily ed. June 12, 1996) (statement of Sen. Cohen).

The Federal Circuit in <u>Emery</u> read the ADRA and its legislative history to mean that, beginning January 1, 2001, "the Court of Federal Claims is **the only judicial forum** to bring any government contract procurement protest." 264 F.3d at 1080 (emphasis added). <u>See also</u> <u>PGBA, LLC v. United States</u>, 389 F.3d 1219, 1227 (Fed. Cir. 2004) ("The legislative history indicates that, by giving the Court of Federal Claims exclusive jurisidiction . . . Congress intended to increase the uniformity of bid protest and government contract law."); <u>Novell, Inc. v. United States</u>, 109 F. Supp.2d 22, 24-25 (D.D.C. 2000) (cited with approval in <u>Emery</u>, 264 F.3d at 1080).[2] In a series of cases, judges in this district have not only concurred that the ADRA grants exclusive jurisdiction over bid protests to the COFC, but expressly held that ADRA jurisdiction is not limited in nature, but is very expansive. <u>See</u> <u>Advanced Sys. Tech., Inc. v. Barrito</u>, 2005 WL 3211394 (D.D.C., November 1, 2005) (ESH) (explaining ADRA and rejecting plaintiff's bid protest claims premised on the APA); <u>Labat-Anderson, Inc. v. United States</u>, 346 F. Supp. 2d 145, 152 (D.D.C. 2004) (JDB).

---

[2] <u>C.f.</u> <u>Baltimore Gas and Electric Co. v. U.S.</u>, 290 F.3d 734, 737 (4th Cir. 2002), which was filed prior to the effective date of the Sunset Provision. The Court stated: "'Congress included the sunset provision (1) to address the problem of forum shopping among the district courts and the Court of Federal Claims and (2) to provide national uniformity in resolving [federal bid solicitation] disputes.' [Citing Senator Cohen, *supra*, in text.]. Congress has not acted to extend district court jurisdiction, and thus federal bid solicitation disputes may now be filed only with the Court of Federal Claims."

3.      Plaintiff, a Disappointed Bidder, Expressly Asserts Breach of Statutes and
        Regulations in Connection with a Procurement.

Plaintiff's Complaint is, at bottom, a bid protest.  Plaintiff's Complaint alleges various

problems in connection with the solicitation for, and completion of, a government procurement.

Moreover, the nature of the relief Plaintiff seeks demonstrates that this lawsuit is a bid protest

within the meaning of the ADRA.  Therefore, this Court lacks jurisdiction over the Complaint.

First, Plaintiff identifies the Solicitation as giving rise to the lawsuit.  Compl. at ¶¶ 1, 5.

Plaintiff's Complaint describes the Solicitation in detail and makes various allegations about that

Solicitation.  Plaintiff's Complaint expressly challenges MSC's handling of the bid Solicitation

No. N00033-06-R-5409, and in particular, its alleged breach of the terms of the Solicitation, the

Federal Acquisition Regulation ("FAR") and the Cargo Preference Act of 1904 ("CPA").

Plaintiff asserts, <u>inter alia</u>, that "the actions of MSC individually and collectively constituted

material alterations of the Solicitation in violation of the terms of the Solicitation and the Federal

Acquisition Regulations."  Compl. ¶¶ 37, 40, 43.[3]  Second, Sealift, consistent with being a

disappointed bidder, protested the award to the GAO.  Compl. at ¶ 11.  GAO denied Plaintiff's

protest on October 17, 2006.  Ex. 1.  Plaintiff now raises substantially the same arguments in this

Court.

Third, as relief, Plaintiff asks the Court to set aside the "award to TAL" and award "the

contract to Sealift."  Compl., Prayer for Relief.  In keeping with its requested relief, Plaintiff

explains in detail in the Complaint why it believes MCS should have accepted its offer.  Compl.

at ¶ 9.  There can be no question that Plaintiff is a disappointed bidder seeking to overturn the

_____

[3] Plaintiff fails to specifically identify the sections of the FAR that MSC allegedly violated.

9

award of a contract: a bid protest over which this Court lacks jurisdiction.

As a bid protest, Plaintiff's claim falls squarely within the ambit of the ADRA. 28 U.S.C.

§1491(b) vests exclusive jurisdiction in the Court of Federal Claims to hear "an action by an

interested party objecting to . . . any alleged violation of statute or regulation in connection with a

procurement or proposed procurement." 28 U.S.C. §1491(b) (emphasis added). The

Complaint's own language demonstrates that Plaintiff is challenging MSC's procurement and the

statutes and regulations governing that procurement. The Court should apply the plain text of the

ADRA. As the Federal Circuit explained:

> The language of §1491(b) . . . does not require an objection to the actual contract
> procurement, but only to the 'violation of a statute or regulation in connection
> with a procurement or proposed procurement.' The operative phrase 'in
> connection with' is very sweeping in scope. As long as the statute has a
> connection to a procurement proposal, an alleged violation suffices to supply
> jurisdiction.

Ramcor Services Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999). See also

Labat-Anderson v. United States, 346 F. Supp.2d at 152.

Plaintiff's allegations and requested relief clearly have a "connection to a procurement."[4]

The Complaint alleges in Count One that MSC violated the terms of the Solicitation and the FAR

and that MSC's actions were arbitrary, capricious and not in accordance with law under the APA.

Compl. ¶¶ 37-38. In Count Two, Plaintiff alleges MSC's actions violated the terms of the

---

[4] The COFC has read the term "procurement" in the ADRA as denoting "all stages of the process
of acquiring property or services, beginning with the process for determining a need for property
or services and ending with the contract completion and close-out." Labat-Anderson, Inc. v.
U.S., 50 Fed. Cl. 99, 104 (Fed. Cl. 2001)(quoting definition provided in 41 U.S.C. §402(2) and
41 U.S.C. §2302(3)(A)). Pursuant to CDA Section 603, 41 U.S.C. § 603, district courts have
jurisdiction over contract claims that arise under maritime contracts.

Solicitation and the FAR and 10 U.S.C. § 2631 (The Cargo Preference Act).[5]  Count Three

alleges that MSC violated the terms of the Solicitation and the FAR and the Suits in Admiralty

Act.  All three counts claim that MSC's and TAL's conduct violated the requirements of the

procurement process.  Moreover, the relief that Plaintiff seeks, overturning of the contract award,

is consistent with a bid protest claim rather than any alleged breach of a maritime contract.  After

all, Plaintiff is not a party to the contract between the government and TAL.

As relief, Plaintiff is seeking: (1) a determination by this Court that MSC's actions were

arbitrary and capricious; (2) an Order by this Court to set aside MSC's award of Contract No.

N00033-06-R-5409 to TransAtlantic Lines, LLC; (3) an Order by this Court enjoining further

performance of this contract by TAL; (4) an award of the Contract by this Court to Plaintiff; (5) a

declaration by this Court that TAL is not a qualified offeror on the subject Solicitation; and (6) an

award of reasonable attorney's fees costs of the action and protest to Plaintiff.  Compl., Prayer for

Relief.  Plaintiff's request for relief clearly shows that its Complaint is a bid protest.

In two cases in the United States District Court for the Northern District of California,

Patriot Contract Servs. LLC v. United States, 2005 WL 851019 (N.D. Cal., April 13, 2005),

vacated as moot, and Puglia Eng'g v. United States Coast Guard, 2005 WL 106785 (N.D. Cal.,

Jan. 18, 2005), that court denied the government's motions to transfer those bid protests to the

COFC because, the court held, the bid protests related to maritime contracts over which the court

could exercise jurisdiction pursuant to the Suits in Admiralty Act ("SAA"), 42 U.S.C. Appx. §§

741 et seq.  The Patriot decision denying the government's motion to transfer that case to the

---

[5] We submit that Plaintiff has no standing to raise the issue of an alleged violation of the CPA.
We will address this and other infirmities in the Complaint in the appropriate forum, the COFC.

COFC subsequently was vacated.  Following the reasoning of the district court in the <u>Patriot</u>

case, we expect that Plaintiff will argue that this Court has jurisdiction over this matter because it

concerns a solicitation for a maritime contract.  For the reasons set forth in this Memorandum,

we submit that the <u>Patriot</u> and <u>Puglia</u> cases were wrongly decided, and should not be followed by

this Court.[6]

        First, 28 U.S.C. §1491(b) vests exclusive jurisdiction in the COFC over "any alleged

violation of statute or regulation in connection with a procurement or proposed procurement."  In

determining whether Plaintiff's Complaint is asserting "any . . . violation of statute or regulation

in connection with a procurement," the Court should be mindful that one of the fundamental

requirements of statutory construction is that words in a statute must be given their ordinary or

natural meaning.  <u>Ardestani v. I.N.S.</u>, 502 U.S. 128, 135-36 (1991); <u>Sadhvani v. Chertoff</u>, 460

F.Supp.2d 114, 121 (D.D.C. 2006) (JDB).  The word "any" is a clear word of broad inclusion,

meaning, "one or more indiscriminately from all those of a kind; any person or persons; . . . any

thing or things; and part, quantity or number. . ."  WEBSTER'S THIRD NEW WORLD DICTIONARY

---

[6] The government recognizes that cases will continue to go forward in the district courts under the SAA, 46 U.S.C. § 741 <u>et seq.</u>, and is not suggesting otherwise.  For example, Sealift could bring a maritime tort action in the district court.  <u>See</u> 46 U.S.C. §§ 741-52 (SAA); <u>OPIC v. Industria de Pesca, N.A., Inc.</u>, 920 F.Supp. 207, 212 (D.D.C. 1996) (PLF) (describing jurisdiction of district courts under SAA over certain torts).  Sealift also could bring a straightforward contract action against the government or another party in the district court under Section 603 of the Contract Disputes Act ("CDA"), 41 U.S.C. § 603 and the SAA were it a party to the contract at issue.  <u>Sealift Bulkers, Inc. v. Republic of Armenia</u>, 1996 WL 901091 (D.D.C. Nov. 22, 1996) (PLF) (holding that district courts have jurisdiction over maritime contract claims under the interplay of Section 603 of the CDA and the SAA and interpreting such jurisdiction as extending to the parties to the contract at issue).  However, the Court need not generally define the scope of what maritime contracts could go forward in the district court in order to resolve the transfer issue in this case.  It is enough for the Court to recognize that disappointed bidders, like Sealift in this case, must bring bid protests in the COFC pursuant to the specific provisions of the ADRA.

OF THE ENGLISH LANGUAGE UNABRIDGED (1976).  See also Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 31 (2004) (interpreting a contract clause containing the word "any," finding that a natural reading of the word has an expansive meaning, "one or some indiscriminately of whatever kind," holding that there was no reason to contravene the clause's obvious meaning). "[W]here the words of a law, treaty, or contract, have an obvious meaning, all construction, in hostility with such meaning is excluded."  Id.

Following the reasoning of the Supreme Court, Plaintiff's attempted evasion of the ADRA's clearly defined jurisdiction over bid protests impermissibly attempts to reinterpret the statute and Congress' specific inclusion of the word "any" in the ADRA.  The ADRA broadly locates jurisdiction over bid protests in the COFC.  See Labat v. Anderson, 346 F.Supp. 2d at 151 and Advanced Systems Technology, Inc. v. Barrito, 2005 WL 3211394 at *3 et seq.

By reading out of the statute the word "any," Plaintiff violates an additional "cardinal principle of statutory construction," that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (citing Duncan v. Walker, 533 U.S. 167 (2001). See also United Am., Inc. v. N.B.C.-U.S.A. Hous., Inc. Twenty Seven, 400 F. Supp. 2d 59, 62 (D.D.C. 2005).  It is clear, that the ADRA Sunset Provision, having taken effect in January 2001, precludes the federal district courts from hearing any cases relating to bid protests.  The issues that Plaintiff alleges in its Complaint are violations of statutes and regulations in the context of a bid solicitation.  In Labat v. Anderson, supra, and Advanced Systems Technology, Inc. v. Barrito, supra, Judges Bates and Huvelle held that the ADRA clearly ended APA jurisdiction over bid protests within the district courts and furthermore, that the ADRA created expansive COFC

jurisdiction over procurement disputes. As long as a statute has a connection to a procurement

proposal, an alleged violation suffices to supply jurisdiction to the COFC. <u>Barrito</u>, <u>supra</u>, at *5

(COFC jurisdiction over procurement issues is far more "expansive" than just bid protests).

Additionally, Judge Bates, in <u>Labat-Anderson</u>, read the term "procurement" to encompass

all states of the procurement process from determining the Government's needs to contract

completion and closeout. <u>Labat</u>, 346 F.Supp.2d at 151. Clearly, judges in this District

understand the legislative intent behind the ADRA and its Sunset provision: that forum shopping

be eradicated; that consistent and uniform case law be produced; and that all bid protest issues

fall under the jurisdiction of the COFC.[7] To attempt to carve out "types" of bid protests, such as

Plaintiff is attempting to do here by asserting maritime jurisdiction, would result in the narrowing

of the COFC's expansive jurisdiction over procurement matters, including bid protests, and is

counter to the legislative intent behind the ADRA.[8]

---

[7] <u>See</u> comments by Senator Cohen, <u>supra</u>.

[8] In <u>Asta Engineering v. United States</u>, 46 Fed. Cl. 674, 676-77 (Fed. Cl. 2000), and <u>Bayship Management v. United States</u>, 43 Fed. Cl. 535, 537 (Fed. Cl. 1999), the COFC indicated that bid protests concerning solicitations for maritime contracts should go forward in the district courts. However, those cases were decided prior to the expiration of the ADRA's Sunset Provision and so do not squarely resolve the jurisdictional issues raised in this case. <u>Cf.</u> <u>Puglia Eng'g</u>, <u>supra</u>, and <u>Patriot</u>, <u>vacated as moot</u>, <u>supra</u>, denying motions to transfer maritime bid protests to the COFC. For the reasons stated in this Memorandum, those cases were wrongly decided and, of course, do not bind this Court. <u>But see</u> <u>Burger v. United States</u>, 49 Fed. Cl. 10 (Fed. Cl. 2001) (finding that COFC lacked subject matter jurisdiction over a claim brought under admiralty jurisdiction and 28 U.S.C. § 1491, and that jurisdiction appropriately belonged with the district court). <u>Burger</u> is distinguishable because in <u>Burger</u> Plaintiff inappropriately invoked Tucker Act jurisdiction, where there was in fact, none. The claims presented in <u>Burger</u> were solely maritime and had no Tucker Act implications whatsoever. Moreover, none of the cases cited in this footnote offer any precedential value to this Court. This case is brought in a District where judges have observed that the district courts no longer maintain jurisdiction over *any* bid protest matters. Thus, the decisions cited in this footnote offer no precedential value for the proposition that this Court has jurisdiction over Plaintiff's Complaint. On the contrary, the decisions of this

Second, it is clear by the language of the ADRA itself that Congress considered the issue of competing grants of jurisdiction when drafting the language.  28 U.S.C. § 1491(c) states: "Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against . . . the Tennessee Valley Authority . . . ."  Congress considered the jurisdiction of various federal courts and expressly reserved certain claims to courts other than the Court of Federal Claims.  By attempting to assert admiralty jurisdiction here, Plaintiff is essentially asking this Court to find that the legislature inadvertently omitted district court jurisdiction over maritime claims under subsection (c).  But, of course, it is axiomatic that federal courts cannot assert jurisdiction unless expressly granted that authority.  Kenosha v. Bruno, 412 U.S. 507, 511 (1973) (citing Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)).  As such, it is inappropriate to divert from the plain language of the ADRA in this case.

Third, since the passage of the ADRA in 1996, and continuing after the Sunset Provision became effective in 2001, the Court of Federal Claims has continued to adjudicate the full range of bid protest cases, including bid protests pertaining to awards of maritime contracts subsequently issued to successful bidders.  See, e.g., Great Lakes Dredge & Dock Co. v. United States, 60 Fed.Cl. 350 (Fed. Cl. 2004); Norfolk Dredging Co., Inc. v. United States, 58 Fed.Cl. 741 (Fed.Cl. 2003), reversed and remanded on other grounds, 375 F.3d 1106 (Fed. Cir. 2004), petition for cert. on other grounds, 73 U.S.L.W. 3364 (Dec. 10, 2004); Marine Hydraulics Intern., Inc. v. U.S., 43 Fed.Cl. 664 (Fed. Cl. 1999); Bean Stuyvesant LLC v. United States, 48 Fed.Cl. 303 (Fed. Cl. 2000); W & D Ships Deck Works, Inc. v. U.S., 39 Fed.Cl. 638 (Fed. Cl. 1997);

Court argue for transfer of this case to the COFC.

15

Mike Hooks, Inc. v. United States, 39 Fed.Cl. 147 (Fed. Cl. 1997).

## **CONCLUSION**

Plaintiff alleges a violation of various statutes and the FAR in connection with a bid solicitation.  Under basic principles of sovereign immunity and statutory construction, the Court of Federal Claims now exercises exclusive jurisdiction over this case as a result of the ADRA and its Sunset Provision.  Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's Complaint and transfer to the Court of Federal Claims is required pursuant to 28 U.S.C. § 1631.

Respectfully submitted,

       s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

       s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

       s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Cara R. Conlin
Assistant Counsel
Department of the Navy
Military Sealift Command



United States Government Accountability Office
Washington, DC 20548

**Comptroller General**
**of the United States**

DOCUMENT FOR PUBLIC RELEASE

The decision issued on the date below was subject to a
GAO Protective Order. This redacted version has been
approved for public release.

# Decision

**Matter of:**   Sealift, Inc.

**File:**   B-298588

**Date:**   October 13, 2006

Constantine G. Papavizas, Esq., Winston & Strawn LLP, and Timothy B. Shea, Esq.,
Nemirow Hu & Shea, for the protester.
Brian A. Bannon, Esq., and Andrew W. Dyer, Jr., Esq., Blank Rome LLP, for
TransAtlantic Lines, LLC, an intervenor.
Robert M. Elwell, Esq., and Daniel W. Wentzell, Esq., Military Sealift Command, for
the agency.
Mary G. Curcio, Esq., and John M. Melody, Esq., Office of the General Counsel, GAO,
participated in the preparation of the decision.

### DIGEST

Protest that awardee's warranted fuel consumption rate is understated does not
provide a basis for questioning award where fixed-price contract is to be awarded
and contract provides mechanism for government to recover any increased costs due
to failure of contractor to perform at warranted rate.

### DECISION

Sealift, Inc. protests the award of a contract to TransAtlantic Lines, LLC (TAL) under
request for proposals (RFP) No. N00033-06-R-5409, issued by the Department of the
Navy, Military Sealift Command (MSC), for charter of a tank vessel. Sealift
principally complains that TAL understated its vessel's fuel consumption rate.

We deny the protest.

The RFP provided for award of a fixed-price contract to the offeror who submitted
the lowest-priced, technically acceptable proposal. With respect to price, offerors
were required to propose a charter hire rate and a warranted fuel consumption rate
(at specified speeds). The total evaluated price was to take into consideration both
the charter rate and the cost of fuel, based on the warranted fuel consumption and
speed information. Following receipt and evaluation of proposals, TAL was selected
for award as the low-priced, technically acceptable offeror.

Sealift maintains that the award is improper because TAL warranted a fuel consumption rate that is lower than the actual rate for its offered vessel, which resulted in TAL's price being evaluated as lower than Sealift's.

MSC responds that, whether or not TAL's warranted rate is accurate, since the solicitation contemplated the award of a fixed-price contract, TAL will only be paid at its warranted rate. In this regard, the Navy points out that the solicitation specifically addressed the government's redress should the offeror's ship fail to perform at the warranted fuel consumption rate; under the heading "Contract Terms and Conditions," the solicitation provides that, if the contractor breaches its fuel or speed warranties, "... the hire [payment] may be equitably decreased, the Charter may be terminated, or the Vessel may be placed off-hire, at Charterer's option so as to indemnify the Charterer to the extent of such failure." RFP at II-7. MSC concludes that TAL's stated fuel consumption rate was the proper basis for evaluating its price.

We agree with MSC. As the agency asserts, the contract is fixed-price in that--in light of the provisions that enable the agency to recover from the contractor any increased operation costs due to breaches of the warranted fuel and speed warranties--the contractor will only be entitled to payment based on its warranted fuel consumption rate. Thus, the accuracy of TAL's warranties is irrelevant. This conclusion is consistent with our decision in United States Lines, Inc., B-197894, Oct. 20, 1980, 80-2 CPD ¶ 299 at 2 (ability of awardee to perform at warranted rate of consumption is irrelevant, since contract provisions protect the government if the warranty is breached). The foundation for this analysis is our long-standing view that a below-cost bid or offer is permissible in a fixed-price environment, since contract payment will be based on the offered price, which is not subject to adjustment during performance barring unforeseen circumstances. See GTSI Corp., B-286979, Mar. 22, 2001, 2001 CPD ¶ 55 at 5.

Sealift also asserts that TAL misrepresented that it would provide a crew in the manner required by the solicitation. In this regard, the solicitation provided that "[t]he Master, Officers and crew of this Vessel shall be appointed or hired by the Owner . . . ." RFP at III-3. According to Sealift, TAL will use a vessel manager or crewing agent to hire the crew, in violation of the solicitation requirement that the owner do so.[1] However, this solicitation provision concerns a performance

---

[1] Sealift filed its protest in our Office on August 7, 2006, based on information obtained during a July 27 debriefing. In comments filed on August 18, Sealift argued for the first time that, if the owner subcontracts for its crew, the owner will violate the small business subcontracting requirement that an offeror incur at least 50 percent of the cost of contract labor with its own employees. Sealift knew of this basis for protest based on the July 27 debriefing, where it learned, allegedly, that TAL planned to subcontract for its crew. Since Sealift did not raise this allegation
(continued...)

requirement–that is, a requirement that the contractor must adhere to during contract performance–rather than a proposal requirement. In this regard, the solicitation does not require the offeror to provide the names of crew members or otherwise address how it will meet the need for a crew in its proposal. Rather, the RFP requires the owner to provide the crew list no later than 96 hours prior to the time the ship is to be delivered to the load or delivery port. RFP at I-9. As such, whether TAL complies with it is a matter of contract administration for consideration by MSC, not by our Office. Fritz Cos., Inc., B-246736 et al., May 13, 1992, 92-1 CPD ¶ 443 at 7.

The protest is denied.

Gary L. Kepplinger
General Counsel

_____

(...continued)
within 10 days of the debriefing, that is, by August 7, it is untimely and will not be considered. 4 C.F.R. § 21.2(a)(2) (2006). In any case, this argument assumes that the crew will be employed directly by the subcontractor or crewing agent. This is not established in the record, and TAL disputes it.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SEALIFT, Inc.,** | ) |
| 68 West Main Street | ) |
| Oyster Bay, N.Y., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil  Action  No. 06-2110 (RJL) |
| | ) |
| **Rear Admiral Robert D. Reilly, Jr.** | ) |
| Commander, | ) |
| Military Sealift Command | ) |
| Department of Navy | ) |
| 914 Charles Morris Court, S.E. | ) |
| Washington Navy Yard | ) |
| Washington, D.C.  20398 | ) |
| | ) |
| and | ) |
| | ) |
| United States of America, | ) |
| by Department of Justice, | ) |
| 950 Constitution Ave., N.W. | ) |
| Washington, DC 20530, | ) |
| | ) |
| Defendants. | ) |
| | ) |

<u>**ORDER**</u>

For good cause shown, upon consideration of the entire record herein, the Court hereby:

GRANTS Defendants' Motion to Transfer and transfers this case to the United States    Court

of Federal Claims pursuant to 28 U.S.C. § 1631.

DATED:

_____
UNITED STATES DISTRICT JUDGE