United States District Court
For the District of Columbia

| | |
|---|---|
| Sealift, Inc. )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>Rear Admiral Robert D. Reilly Jr., )<br>Commander, )<br>Military Sealift Command, et al., )<br>    Defendants. ) | CA No. 06 – 2110 (RJL) |

**Plaintiff's Memorandum in Opposition to Government Motion to Transfer**

Sealift, Inc. respectfully opposes the Government Motion to Transfer the action to the Court of Federal Claims. As set out below, the Court of Federal Claims itself specifically has declined to hear maritime cases, including disappointed bidder disputes like this one, primarily because the Suits in Admiralty Act has long been held to displace that court's Tucker Act jurisdiction. The treatment by the Government of these precedents in a footnote does nothing to diminish the force of these decisions. Thus, the Government motion seeks to consign this case to procedural ping pong between the courts. In addition, the primacy of the District Courts over maritime and admiralty disputes, enshrined in the Constitution and ingrained in the fabric of the maritime precedent, is never even acknowledged in the Government Motion.

**This Case is Maritime in Character**

In this action Sealift, the operator of 12 US flag vessels, challenges the decision of the defendant, Military Sealift Command ("MSC") to award a contract for the long-term charter (lease) of a tank vessel to another offeror, Transatlantic Lines, LLC ("TAL")

under a published solicitation. Sealift had been the incumbent contractor under this contract for more than ten years, most recently with its vessel the *Montauk*. Sealift's contract with MSC for this activity was terminated by MSC on November 22, 2006.

The Complaint claims jurisdiction as a maritime matter under 28 U.S.C. §1333. The decision of the agency is reviewable under federal question, 28 U.S.C. §1331, the Administrative Procedure Act, 5 U.S.C. §706, and the Suits in Admiralty Act, 46 U.S.C. § 30301 ("SIAA"). The Complaint declares that "[t]his action arises out of a solicitation for a maritime contract, the time charter of a vessel to be operated in the foreign trade." Complaint at Para.1.

The Complaint alleges three basic errors in the procurement. First, MSC's award to TAL for its vessel, named the *Bonito* upon its purchase and then renamed the *Transpacific*, was based on a material misrepresentation of the fuel consumption at a level 31% below the actual fuel consumption. Under a time charter, the charterer, MSC in this case, supplies the fuel to the vessel or pays the cost of fuel. The distinguishing determinant of the cost analysis of the offers in this solicitation was the cost of fuel assigned to the competing vessels. Sealift learned of TAL's misrepresentation in the debriefing after contract award. In connection with Sealift's protest to the General Accountability Office, MSC responded with indifference to the misrepresentation claiming that the agency could hold TAL to the fuel consumption that it had warranted. According to MSC, the fuel consumption warranty in the offers did not constitute a statement about the actual performance specifications of the vessel offered; rather, it was nothing more than a request for a specified fuel allotment during the course of the charter. If TAL were to exceed the warranted fuel allotment and, if MSC were to

discover the overuse, according to this MSC reasoning, MSC had the ability to recoup the value of the extra fuel used by TAL.  This rationalization fundamentally mischaracterizes the solicitation and ignores the Government's proper interests in fostering truthful contracting.

Second, MSC averted its gaze from the specific requirements of the solicitation and the law requiring contractors to perform reflagging and repair work within the United States.  Vessels transferring country of registry (e.g., from Swedish to United States) normally have to undergo shipyard work to meet US Coast Guard certification standards. When the vessel is to be chartered by the Department of Defense, that work must be done in the United States under 10 U.S.C. Section 2631. TAL's vessel never entered a shipyard in the United States prior to its delivery to MSC. Immediately after purchase and before delivery of the vessel to MSC, TAL took the vessel to a shipyard in Singapore where it at had substantial reflagging and repair work performed.  During the more than one week that the vessel was in the shipyard in Singapore, the fire protection system, deck welding and certain piping work were upgraded for reflagging with the assistance of a Houston- based company that specializes in reflagging vessels to US standards. The work conducted at the shipyard in Singapore constituted reflagging or repair work in violation of the solicitation and the explicit terms of 10 U.S.C. Section 2631.   MSC was well aware of the itinerary of the vessel and the fact that substantial repair and reflagging work was done in Singapore but ignored the blatant violation of the solicitation and the law.

Finally, MSC waived a number of other terms in the solicitation so as to modify the essential terms of the contract.

--TAL will not itself have "appointed or hired" the officers and crew and will not expend at least 50% of the costs of personnel for direct employees as required by the Solicitation. TAL will, in fact, subcontract these functions. MSC was, of course, well aware of the lack of experience by TAL in the operation of the tank vessel because TAL operates no tankers. MSC improperly waived the contract requirements to this effect.

-- The Solicitation required that the vessel have vetting certificates from commercial petroleum facilities at the refineries to be served by the vessel no less than 10 days prior to the canceling date, November 1, 2006. TAL's vessel did not have any vetting certificates by October 21, 2006 or, indeed, by November 1, 2006.

-- The Solicitation required each offeror to obtain a security clearance. At the time of its offer, TAL had a demonstrated inability to obtain a security clearance having failed to obtain one for more than 18 months under another defense contract.

-- Fundamental technical specifications were ignored. Even in the few weeks immediately after delivery to MSC, the vessel has required various repairs and has not been available for carriage of petroleum products owing to technical deficiencies.

This time charter of a vessel in international trade is maritime in character. *Norfolk So. Ry. Co. v. Kirby,* 543 U.S. 14, 24 (2004) (the "true criterion" is whether the contract has reference to maritime service or maritime transactions.). The solicitation for the time charter of a ship in the foreign trade is a quintessentially maritime transaction.

**ARGUMENT**

**The District Courts, Not the Court of Federal Claims, Have Jurisdiction Over Maritime Bid Protests Pursuant to SIAA**

    **1.    The Court of Federal Claims Has No Jurisdiction Over the Complaint**

The Court of Federal Claims has made it abundantly clear that it does not claim jurisdiction over disputes relating to maritime transactions. So, if this case were to be transferred there, the Court of Federal Claims would decline jurisdiction. In a decision transferring a maritime bid protest to a district court pursuant to the Suits in Admiralty Act, 46 U.S.C. § 30301 *et seq.* ("SIAA"), the Court of Federal Claims held

> The jurisdiction of the district courts over actions involving maritime contracts exists at the expense of the jurisdictional grants of the Tucker Act. At no time after the enactment of the Suits in Admiralty Act, has Congress expressly conferred admiralty jurisdiction on the United States Court of Federal Claims or its predecessors which exercise Tucker Act jurisdiction. . . . There is no evidence that Congress determined, in enacting the ADRA, to vary this long-standing exclusive relegation of maritime contract matters involving the United States to the district courts. . . . In light of the long history of exclusive district court admiralty jurisdiction, over maritime contract matters, the Tucker Act amendments, codified in 28 U.S.C. § 1491(b), cannot be held to confer concurrent Suits in Admiralty Act jurisdiction on the United States Court of Federal Claims. In short, absent specific legislation granting the United States Court of Federal Claims admiralty jurisdiction covering bid protests on maritime contracts, jurisdiction over the instant matter is lacking.

*Asta Eng'g v. United States*, 46 Fed. Cl. 674, 676-77 (2000) (citing *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 172-79 (1976); *Umpqua Marine Ways,*

*Inc. v. United States,* 925 F.2d 409, 414 (Fed. Cir. 1991); *Glover v. Johns-Manville Corp.,* 662 F.2d 225, 232 (4th Cir. 1981); *Southwest Marine,* 896 F.2d 532, 534 (Fed. Cir. 1990); *Bayship Mgmt.*, *Inc. v. United States*, 43 Fed. Cl. 535 (1999)).

Similarly, in *Bayship Management, Inc. v. United States*, the Court of Federal Claims held that it lacked jurisdiction to hear a bid protest relating to contracts for the "continued maintenance, operation, and management" of Government-owned vessels because the SIAA specifically reserved jurisdiction over maritime bid protests to the District Courts. 43 Fed. Cl. 535, 535 (1999).

The Government disparages the clear holdings of the *Asta* and *Bayship* cases as somehow weakened because they came out before the January 1, 2001 sunset provided for in the Administrative Dispute Resolution Act, P.L. 104-320, § 12(d), 110 Stat. 3875 (codified in note to 28 U.S.C. § 1491 ("ADRA"). Defendants' Memorandum of Points and Authorities in Support of Their Motion to Transfer ("Government Memorandum") at 14.

The sunset provision did not affect the Court of Federal Claims' jurisdiction at all; it only revoked the new jurisdiction over pre-award bid protests granted the District Courts by ADRA. *Compare J.P. Francis & Assoc. v. United States*, 902 F.2d 470 (9th Cir. 1990) ("we find that 28 U.S.C. § 1491(a)(3) divests the district court of jurisdiction over pre-award government contract claims. Accordingly, this case is hereby remanded to the district court and that court is ordered to vacate its decision in this matter and dismiss the case for want of subject matter jurisdiction."); *Opal Mfg. Co. v. UMC Indus., Inc.*, 553 F. Supp. 131, 133 (D.C. Cir. 1982) (no jurisdiction over pre-award protest) *with* ADRA, P.L. 104-320 § 12, 10 Stat. 3875 (codified at 28 U.S.C § 1491) (granting pre- *and* post-award jurisdiction to both the District Courts *and* the Court of Federal Claims). Indeed, when *Bayship* and *Asta* were decided, the Court of Federal Claims actually enjoyed the broadened jurisdiction that ADRA granted that court over post-award bid protests. ADRA, P.L. 104-320 § 12, 10 Stat. 3875 (codified at 28 U.S.C § 1491).

There is no support for the Government's argument that the sunset of the supplemental jurisdiction that ADRA granted the District Courts impliedly expanded the jurisdiction of the Court of Federal Claims, and as set forth below, the Federal Circuit remains reticent to implied grants of its jurisdiction provided by 28 U.S.C. § 1491 ("Tucker Act"). The Court of Federal Claims routinely holds that it lacks jurisdiction with regard to other claims against the United States relating to maritime contracts, *see, e.g.*, *Thrustmaster of Texas, Inc. v. United States*, 59 Fed. Cl. 672 (2004); *Burger v. United States*, 49 Fed. Cl. 10 (2001), because the SIAA displaces Tucker Act jurisdiction.[1] In one case, *Transatlantic Lines, LLC v. United States*, 68 Fed. Cl. 48 (2005), the Court of Federal Claims entertained a maritime bid protest relating to the transportation of cargo between Florida and Guantanamo Bay without considering the jurisdiction of the court. The decision is inconsequential for purposes of jurisdiction because "[I]t is a well established principle of interpretation that courts are 'not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*.'" *Doe v. Exxon Mobil Corp.,* -- F.3d --, slip op. at 13, 2007 WL 79007 (DC Cir. Jan. 12, 2007) citing *United States v. L.A. Tucker Lines, Inc.*, 344 U.S. 33, 38 (1952).

In *Patriot Contract Servs., LLC v. United States*, 2005 WL 85019 (N.D. Cal., April 13, 2005), <u>vacated as moot</u>, 2005 LEXIS 241118 (October 19, 2005) and *Puglia*

---

[1] The Court explained:

> It has been held that the Suits in Admiralty Act largely displaces this court's Tucker Act jurisdiction.
>
> See *United States v. United Continental Tuna Corp., 425 U.S. 164, 179 & n.18, 47 L. Ed. 2d 653, 96 S. Ct. 1319 (1976)* (stating that Congress had "virtually eliminated the quasi-admiralty jurisdiction of the Court of Claims under the Tucker Act," and citing as an exception suits by government employees working aboard government ships); *ASTA Eng'g, Inc. v. United States, 46 Fed. Cl. 674, 676 (1999)* ("The jurisdiction of the district courts over actions involving maritime contracts exists at the expense of the jurisdictional grants of the Tucker Act."); *Bayship Mgmt., Inc. v. United States, 43 Fed. Cl. 535, 536 (1999)* ("'Jurisdiction over matters arising in admiralty, including maritime contracts, has traditionally been with the federal district courts.'") (quoting *Southwest Marine of San Francisco, Inc. v. United States, 896 F.2d 532, 534 (Fed. Cir. 1990)).*

*Burger v. United States*, 49 Fed. Cl. 10 (2001).

*Eng'g v. United States Coast Guard*, 2005 WL 106785 (N.D. Cal., Jan. 18, 2005) the District Court expressly adopted the *Bayship* and *Astra* rationale and rejected motions to transfer maritime bid protests to the Court of Federal Claims overruling the very same arguments urged by the Government here.

### 2. Jurisdictional Grants to the Court of Federal Claims at the Expense of the District Courts Must be Strictly Construed

The United States Court of Appeals for the Federal Circuit strictly construes its Tucker Act jurisdiction and will not allow a subsequently enacted jurisdictional statute like ADRA to repeal impliedly an earlier jurisdictional statute such as SIAA. For example, in *Southwest Marine of San Francisco v. United States*, the Federal Circuit found that the changes wrought by the Federal Courts Improvement Act ("FCIA") did not change the admiralty exception to the Federal Circuit's jurisdiction because the FCIA, like ADRA, failed to repeal explicitly the earlier statute. 896 F.2d 532, 533-34 (Fed. Cir. 1990) ("clear congressional intent is necessary to lead to the conclusion that the Federal Courts Improvement Act created an exception to the district courts' exclusive jurisdiction over maritime contracts") (citing *United States v. United Continental Tuna,* 425 U.S. 164, 168 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.")). Furthermore, the Federal Circuit is even less likely to sustain Tucker Act jurisdiction where it is urged to find that a specific statute has been superceded by a more general one. *Id.* at 533.

Similarly, the Federal Circuit has also held that "a contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere." *Massie v. United States*, 166 F. 3d 1184, 1188 (Fed. Cir. 1999) (citing *Matson Nav. Co. v. United States,* 284 U.S. 352, 359-60 (1932); *Del-Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1367 (Fed. Cir. 1998)).

The Government argues that the broad language found in ADRA repealed the existing SIAA admiralty exception to the Federal Circuit's Tucker Act jurisdiction, even though ADRA makes no specific reference to the SIAA or the admiralty exception and the Constitution has placed jurisdiction over these claims in the District Courts. Government Memorandum at 6 -12.  This is wrong and flies in the face of clear Federal Circuit precedent.   In rejecting Tucker Act jurisdiction over maritime bid protest claims, the Court of Federal Claims stated:  "[W]hen Congress intends to confer jurisdiction on the United States Court of Federal Claims it does so expressly.  As noted *supra,* the Suits in Admiralty Act displaces Tucker Act jurisdiction with respect to maritime contract claims involving the United States." *Asta Eng'g v. United States*, 46 Fed. Cl. 674, 676 (Fed. Cl. 2000) (citing *Chin v. United States,* 890 F.2d 1143, 1146 (Fed. Cir. 1989); *In re United States,* 877 F.2d 1568, 1572 (Fed. Cir. 1989)).

Lastly, the Government's interpretation of ADRA subjects the law to Constitutional challenge.  The Constitution grants to federal courts jurisdiction in all "cases of admiralty and maritime jurisdiction." U.S. Constitution Art. III, §2, clause 1. "[The Supreme Court's] authority to make decisional law for the interpretation of maritime contracts stems from the Constitution's grant of admiralty jurisdiction to federal courts." *Norfolk So. Ry. Co. v.  Kirby*, supra at 23. In 28 U.S.C. §1333 the district courts are given original jurisdiction of "any civil case of admiralty or maritime jurisdiction." The interpretation urged by the Government would withdraw admiralty issues from the Article III District Courts and send them to the Article I Court of Federal Claims.  28 U.S.C. § 171.  However, "Congress cannot 'withdraw from [Art. III] judicial cognizance *any matter which, from its nature*, is the subject of a suit at common law, or in equity or *admiralty*." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n.23 (1982) (emphasis added) (citing *Murray's Lessee v. Hoboken Land & Improv. Co.*, 18 How. 272, 284 (1856)).

### 3. Uniformity of Maritime Law Requires Jurisdiction in the District Courts

There is no surprise that Congress reserved maritime bid protest matters to the District Courts along with all other suits against the United States. Uniformity of maritime law has served as a jurisprudential north star since the birth of the republic and District Courts have broadly commanded jurisdiction over admiralty at the expense of other fora. *See, e.g.*, *Norfolk So. Ry. Co. v. Kirby*, supra ; *Southern Pac. Co. v. Jensen*, 244 U.S. 20 (1917) (discussing preemption of state law and holding that no law can be tolerated that "works material prejudice to the characteristic features of general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself."). Further to this longstanding goal, Congress enacted the SIAA ensuring that maritime claims against the United States were properly brought before the District Courts along with other maritime claims. Thus, in *United States Shipping Bd. Emergency Fleet Corp. v. Rosenberg Bros. & Co.*, the United States Supreme Court reviewed the structure and legislative history of SIAA and determined that its "complete system of administration, applying to the United States and the corporations alike, by which uniformity is established as to venue, service of process, rules of decision and procedure, [and] rate of interest" repealed "the provisions of all other Acts" inconsistent with it and preempted Court of Claims jurisdiction as to maritime issues. 276 U.S. 202, 213-14 (1928).

Lastly, "[o]ne need only examine several classic Supreme Court decisions to see that '[t]he instances of partial repeal of the Tucker Act by laws expressly directing litigation of some class or kind elsewhere are common." *Puget Power & Light Co. v. United States*, 23 Cl. Ct. 46, 57-58 (1991) (quoting *Fiorentino v. United States*, 607 F.2d 963, 969 (Ct. Cl. 1979)).

**Conclusion**

The Government motion to transfer must be denied. The Government should submit the record the record of agency deliberations so that an expeditious exchange of dispositive motions can be scheduled. A proposed order is submitted herewith.

                        Respectfully submitted,

                        /s/

                        Timothy B. Shea
                        DC Bar No. 234005
                        Nemirow Hu & Shea
                        1629 K Street, NW Suite 500
                        Washington, D.C.  20006
                        Tel. No. (202) 835-0300
                        Facsimile No. (202) 835-0306

                        /s/

                        Constantine G. Papavizas
                        DC Bar No. 388403
                        Winston & Strawn LLP
                        1700 K Street, NW
                        Washington, D.C. 20006
                        Tel. No. (202) 282-5732
                        Facsimile No. (202) 282-5100

                        Attorneys for Sealift, Inc.

United States District Court
For the District of Columbia

| | |
|---|---|
| Sealift, Inc.<br>      Plaintiff,<br><br>v.<br><br>Rear Admiral Robert D. Reilly Jr.,<br>Commander,<br>Military Sealift Command, et al.,<br>      Defendants. | )<br>)<br>)<br>)<br>)   CA No. 06 – 2110 (RJL)<br>)<br>)<br>)<br>)<br>) |

**Order**

Upon consideration of the defendants' motion to transfer this action to the Court of Federal Claims and the opposition thereto and the entire record herein, it is

Ordered that the motion shall be, and hereby is, denied.

United States District Judge

Dated: