UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEALIFT, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2110 (RJL) |
| ) | |
| Rear Admiral Robert D. Reilly, Jr., ) | |
|   Commander, ) | |
|   Military Sealift Command, ) | |
|   Department of Navy, ) | |
| ) | |
|   and ) | |
| ) | |
| United States of America, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO
THEIR MOTION TO TRANSFER**

Defendants Rear Admiral Robert D. Reilly, Jr., Commander, Military Sealift Command, Department of Navy, and the United States of America move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(3) for an order transferring this case to the United States Court of Federal Claims ("COFC") under the transfer provisions of 28 U.S.C. § 1631.[1] The Tucker Act, as amended by the Administrative Dispute Resolution Act ("ADRA"), grants the COFC exclusive federal court jurisdiction over bid protests such as this one. 28 U.S.C. § 1491(b)(1).

Sealift's Memorandum in Opposition to Government Motion to Transfer, Document No.

---

[1] As we noted in the initial motion, by operation of the filing of Defendant's Motion to Transfer this action to the COFC and pursuant to 28 U.S.C. §1292(d)(4)(B), "no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion." 28 U.S.C. §1292(d)(4)(B). That statutory provision also provides that if "an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit." Id.

5, argues that the district courts have jurisdiction over "maritime and admiralty disputes." Pl. Opp. at 1. We agree that the Suits in Admiralty Act ("SAA") grants the district courts jurisdiction over a variety of maritime matters. 46 U.S.C. § 741 et seq. Also, as we pointed out in our Memorandum, pursuant to the Contract Disputes Act ("CDA") Section 603, 41 U.S.C. § 603, district courts have jurisdiction over contract claims that arise under maritime contracts. However, this is not a maritime contract but instead, as Plaintiff concedes, this case is a bid protest case. Pl. Opp. at 1. In fact, there is no express contract between Plaintiff and the government at all. Thus, Plaintiff's reliance on contract cases like Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 31 (2004) is misplaced. See, e.g., Pl. Opp. at 4.[2] As a bid protest, Plaintiff's claim falls squarely within the ambit of the ADRA, which vests exclusive jurisdiction in the Court of Federal Claims to hear "an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or proposed procurement." 28 U.S.C. §1491(b) (emphasis added).

A.   **Bid Solicitation and Bid Protest Cases Are Not By Nature "Maritime Contracts."**

Sealift argues that this case should be heard in this Court because it is "maritime in character." Pl. Opp. at 1. Congress' passage of the ADRA, which codified the jurisdiction of the federal courts over bid protests, 28 U.S.C. § 1491(b)(1), and the ADRA's "Sunset Provision," which terminated district court jurisdiction over bid protest cases on January 1, 2001,[3] reflect a

---

[2] Plaintiff's opposition is unpaginated. Defendants' reply refers to the pagination added to Plaintiff's opposition by the Court's ECF system.

[3] The Sunset Provision provided, "The jurisdiction of the district courts of the United States over the actions described in section 1491(b)(1) of title 28, United States Code [subsec. (b)(1) of this section] (as amended by subsection (a) of this section) shall terminate on January 1, 2001 unless extended by Congress." Jurisdiction was not extended. Plaintiff relies on Southwest Marine of

2

Congressional attempt to funnel all bid protests to the COFC. Sealift's argument that this case is maritime "in character," or concerns "maritime transactions," fundamentally misses the point because Sealift does not have an express contract with the government. Pl. Opp. at 5-6.

Jurisdiction over contract disputes between a "contractor" and the United States concerning true, executed maritime contracts – *i.e.*, that satisfy all the requisite tests of admiralty jurisdiction – fall under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. § 603. In Southwest Marine of San Francisco, Inc. v. United States, 896 F.2d 532 (Fed. Cir. 1990) , the Court quoted section 603 of the CDA:

> **41 U.S.C. § 603.** Appeals under paragraph (g) of section 607 of this title and suits under section 609 of this title, arising out of maritime contracts, shall be governed by chapter 20 [the Suits in Admiralty Act] or 22 [Public Vessels Act] of Title 46 as applicable, to the extent that those chapters are not inconsistent with this chapter.

The Court then stated: "Suits in admiralty governed by chapter 20 or 22 must be brought in the federal district courts." See 46 U.S.C. §§ 742, 782. It is well-settled, however, that bid protest cases do not fall within the CDA. Coastal Corp. v. United States, 713 F.2d 728, 730 (Fed. Cir. 1983).[4]

---

San Francisco, Inc. v. United States, 896 F.2d 532 (Fed. Cir. 1990) and other pre-2001 cases (cases decided prior to the effective date of the Sunset Provision). Pl. Opp. at 6. Plaintiff argues that the date of the cases it relies upon do not matter. See Pl. Opp. at 6. However, it is precisely because prior to the effective date of the Sunset Provision that the district courts and the COFC had concurrent jurisdiction over bid protests, that the date matters.

[4] At most, Plaintiff's bid protest would be a "preliminary contract" historically excluded from admiralty cases. Disputes arising out of a contract preliminary to a maritime contract historically have not invoked maritime jurisdiction. See Simon v. Intercontinental Transport (ICT) B.V., 882 F.2d 1435, 1442 (9th Cir. 1989) (denying maritime jurisdiction on the basis that admiralty generally denies jurisdiction over contracts involving obligations or services that are merely preliminary to maritime contracts), and Clinton v. International Organization of Masters, Mates & Pilots, Inc., 254 F.2d 370, 372 (9th Cir.1958). See also Shipping Financial Services Corp. v.

To support its argument that this Court has jurisdiction over this case pursuant to the SAA, Sealift cites and relies on CDA maritime contract cases which, by their very nature, are inapposite to bid protests.[5] Instead, the CDA cases Sealift cites are subject to Section 603 of the CDA and therefore <u>must</u> be filed in district court. Far from supporting Sealift's position, Section 603 of the CDA, and the maritime cases subject to it, indicate that when Congress sought to make clear that a category of cases was excepted from jurisdiction in the Court of Federal Claims, it knew how to say so. <u>See</u> 41 U.S.C. § 603.[6]

Plaintiff also relies on <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14, 31 (2004). The United States Supreme Court's decision in that case is distinguishable from this one. At issue in <u>Kirby</u> were the liability limitations in a series of express maritime contracts. <u>Id</u>. at 18-19 (construing bills of lading), 23 (calling case a "contract dispute"). Thus, the United States Supreme Court was presented with an issue of the interpretation of a series of express contracts. <u>Id</u>. at 30 ("this is a simple question of contract interpretation"). <u>Kirby</u> did not involve a bid protest like Sealift's. <u>See id</u>. In <u>Capital Yacht Club v. Vessel Aviva</u>, 409 F.Supp.2d 1, 7-8 (D.D.C. 2006), Judge Urbina reviewed the district court's admiralty jurisdiction and declined to

---

<u>Drakos,</u> 140 F.3d 129, 133 (2nd Cir. 1998) (denying admiralty jurisdiction and providing a detailed and useful scholarly analysis of <u>Exxon</u> and the preliminary contract doctrine).

[5] For example, Sealift cites <u>Southwest Marine,</u> 896 F.2d 532 (CDA case based upon an executed ship repair contract), see Opp. at 6, and <u>Umpqua Marine Ways, Inc</u>. , 925 F.2d 409 (Fed. Cir. 1991) (CDA case based upon ship conversion and diving module fabrication contract), see Opp. at 7.

[6] <u>Glover v. Johns-Manville Corp</u>., 662 F.2d 225 (4th Cir. 1981), also cited by Sealift, Opp. at 6, was a non-CDA contractual indemnity claim that was remanded to determine whether or not it was a maritime contract; if so, the district court would have jurisdiction under the SAA or, if not, the Court of Claims (predecessor to the Court of Federal Claims) would have cognizance under the Tucker Act.

exercise that jurisdiction over an express contract that was not "purely" or "wholly" "maritime in nature."

Although Sealift relies on <u>Asta Engineering v. United States</u>, 46 Fed.Cl. 674 (Fed. Cl. 2000), Pl. Opp. at 6, and <u>Bayship Management v. United States</u>, 43 Fed.Cl. 535 (Fed. Cl. 1999), Pl. Opp. at 7, to support its argument that maritime bid protests belong in the district courts, Sealift concedes that <u>TAL v. United States</u>, 68 Fed. Cl. 48 (Fed. Cl. 2005), a maritime bid protest, went forward in the COFC. Pl. Opp. at 7. Sealift asserts that the fact that <u>Asta</u> and <u>Bayship</u> were decided prior to the January 1, 2001 Sunset of this Court's jurisdiction to hear bid protests is of no moment. Pl. Opp. at 6. Plaintiff argues that the Sunset Provision, "did not affect" the COFC's jurisdiction at all, "it only revoked the new jurisdiction" over bid protests that Congress extended to the district courts. Pl. Opp. at 6. Of course, Plaintiff's argument ignores the clear Congressional direction, in enacting the Sunset Provision, that bid protests should be consolidated in the COFC. <u>See</u> discussion <u>infra</u>.

**B.      There Is No Traditional Maritime Claim for "Disappointed Bidders."**

Sealift concedes at the outset of its opposition that it is a disappointed bidder. Pl. Opp. at 1 (referring to "disappointed bidder disputes like this one"). Nonetheless, Sealift argues that its bid protest belongs in this Court because of the alleged traditional "primacy of the District Courts over maritime and admiralty disputes." <u>Id</u>. Sealift's papers cite no cases supporting an argument that traditional admiralty law supplies a cause of action for bid solicitations and "disappointed bidders." Instead, Sealift relies on cases concerning express maritime contracts, like <u>Kirby</u>, <u>supra</u>.

The admiralty "tradition" does not extend to bid protests. In fact, bid protests are a

5

relatively new creation of Congress unrelated to the SAA.  Traditionally, even within the sphere of government contracting, the Supreme Court had held that a disappointed bidder had no right to dispute the award of a contract to another.  In Perkins v. Lukens Steel Co., 310 U.S. 113 (1940), the Court stated that a disappointed bidder had no standing to challenge a contract let to another entity since the Public Contracts Act was an enactment for the protection of the government, rather than for those contracting with the government.  Such a right came into existence only as a result of statutes such as the Tucker Act and the Administrative Procedure Act.  Obviously, such statutes are neither part of, nor based upon, traditional admiralty law.  Nor do those statutes have anything whatsoever to do with private, non-government contracts, whether admiralty or non-admiralty.  See, e.g., Emery World-Wide Airlines, Inc. v. United States, 264 F.3d 1071, 1078-79 (Fed. Cir. 2001) (setting out the history of government contracting procurement decisions following Perkins v. Lukens Steel Co.).

 Sealift additionally claims that the ADRA did not "repeal" the SAA.  Opp. at 8.  Sealift simply sets up a false dichotomy between the two statutes.  Prior to January 1, 2001, the COFC and the district courts had concurrent jurisdiction over bid protests.  Sealift's claim that the government would withdraw admiralty cases from the district courts is an overstatement.  See Pl. Opp. at 9.  As we stated in our initial motion, the government recognizes that cases will continue to go forward in the district courts under the SAA, and is not suggesting otherwise.  For example, Sealift could bring a maritime tort action in the district court.  See 46 U.S.C. §§ 741-52 (SAA); OPIC v. Industria de Pesca, N.A., Inc., 920 F.Supp. 207, 212 (D.D.C. 1996) (PLF) (describing jurisdiction of district courts under SAA over certain torts).  Also, as explained above, Sealift could bring a straightforward contract action against the government or another party in the

district court under CDA Section 603, 41 U.S.C. § 603, and the SAA were it a party to the contract at issue. Sealift Bulkers, Inc. v. Republic of Armenia, 1996 WL 901091 (D.D.C. Nov. 22, 1996) (PLF) (holding that district courts have jurisdiction over maritime contract claims under the interplay of Section 603 of the CDA and the SAA and interpreting such jurisdiction as extending to the parties to the contract at issue).

Here, the Court need not generally define the scope of what maritime contracts could go forward in the district court in order to resolve the transfer issue in this case. It is enough for the Court to recognize that disappointed bidders, like Sealift in this case, must bring bid protests in the COFC pursuant to the specific provisions of the ADRA.

C.  **Issues of "Uniformity of Law" Require the Court to Transfer this Case Because it is a Bid Protest.**

Sealift trumpets the purported "uniformity" of maritime law as a policy rationale that favors jurisdiction over its bid protest in the district courts. Opp. at 10. First, there is no interest of traditional maritime law in uniformity of bid protests. Second, the interests of uniformity specifically favor bid protest jurisdiction under the ADRA and in the Court of Federal Claims, not the district courts. The purpose of the Sunset Provision was to "channel the entirety of judicial government contract procurement protest jurisdiction to the Court of Federal Claims." Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1079 (Fed. Cir. 2001). Senator Cohen, who offered the Sunset Provision, explained its purpose as follows:

> [The legislation] is designed to increase the efficiency of our procurement system by consolidating jurisdiction over bid protest claims in the Court of Federal Claims. The [legislation] would reverse the decision of the D.C. Circuit in Scanwell . . . . Providing district courts with the jurisdiction to hear bid protest claims has led to forum shopping and the fragmentation of [g]overnment contract law. Consolidation of jurisdiction in the Court of Federal Claims is necessary to

> develop a uniform national law on bid protest issues and end the wasteful practice of shopping for the most hospitable forum.

142 Cong. Rec. S6156 (daily ed. June 12, 1996) (statement of Sen. Cohen).  See also PGBA, LLC v. United States, 389 F.3d 1219, 1227 (Fed. Cir. 2004) ("The legislative history indicates that, by giving the Court of Federal Claims exclusive jurisdiction . . . Congress intended to increase the uniformity of bid protest and government contract law."); Novell, Inc. v. United States, 109 F. Supp.2d 22, 24-25 (D.D.C. 2000) (cited with approval in Emery, 264 F.3d at 1080).  Judges in this district have recognized that the ADRA grants exclusive jurisdiction over bid protests to the COFC, and that ADRA jurisdiction is expansive.  See Advanced Sys. Tech., Inc. v. Barrito, 2005 WL 3211394 (D.D.C., November 1, 2005) (ESH) (explaining ADRA and rejecting plaintiff's bid protest claims premised on the APA); Labat-Anderson, Inc. v. United States, 346 F. Supp. 2d 145, 152 (D.D.C. 2004) (JDB).

      Admiralty uniformity principles arose primarily over the concern regarding application of potentially differing and conflicting state law to vessels and businesses which, by their nature, touch many ports and jurisdictions.  The Lottawanna, 88 U.S. 558 (1874).  Here, state law is not at all in issue.  Sealift's argument turns uniformity principles completely on their head since the specified purpose of the ADRA's Sunset Provision is to require that bid protest actions shall be tried in a single court – the Court of Federal Claims – under a "uniform national law" (quoting Senator Cohen, supra).  As we noted in our initial papers, no admiralty principles are considered by the courts when addressing a bid protest.  That is, bid protest analysis is a separate and distinct area from maritime law.  See, e.g., PGBA, LLC v. United States, 389 F.3d 1219, 1227 (Fed. Cir. 2004) ("The legislative history indicates that, by giving the Court of Federal Claims exclusive

jurisidiction . . . Congress intended to increase the uniformity of bid protest and government contract law.").

Clearly, judges in this District understand the legislative intent behind the ADRA and its Sunset provision: that forum shopping be eradicated; that consistent and uniform case law be produced; and that all bid protest issues fall under the jurisdiction of the COFC. To attempt to exclude "maritime" bid protests would result in the narrowing of the COFC's expansive jurisdiction over procurement matters, including bid protests, and is counter to the legislative intent behind the ADRA.

Sealift spends little time actually addressing Defendants' statutory interpretation argument. Sealift instead argues the alleged primacy of the SAA over the Tucker Act. See, e.g., Pl. Opp. at 8-9 (citing Asta, 46 Fed. Cl. at 676). At bottom, citing Asta and Bayship, supra, Sealift argues that if this Court transfers this case to the COFC, the COFC simply will transfer it back.[7] As noted, the cases Plaintiff relies upon were decided prior to the effective date of the Sunset Provision. Sealift concedes that bid protests have continued to go forward in the COFC. Pl. Opp. at 7 (citing TAL, LLC v. United States, 68 Fed. Cl. 48 (2005)). Likewise, Plaintiff's opposition does not address the explanation in Defendants' moving papers that since the passage of the ADRA in 1996, and continuing after the Sunset Provision became effective in 2001, the Court of Federal Claims has continued to adjudicate the full range of bid protest cases, including bid protests pertaining to awards of maritime contracts subsequently issued to successful bidders.

---

[7] Plaintiff also relies on Patriot Contract Servs. LLC v. United States, 2005 WL 851019 (N.D. Cal., April 13, 2005), vacated as moot, and Puglia Eng'g v. United States Coast Guard, 2005 WL 106785 (N.D. Cal., Jan. 18, 2005). Neither decision binds this Court and Patriot was vacated as moot. We submit that for the reasons set forth in Defendants' submissions, those cases were wrongly decided.

Def. Memo. at (citing Great Lakes Dredge & Dock Co. v. United States, 60 Fed.Cl. 350 (Fed. Cl. 2004); Norfolk Dredging Co., Inc. v. United States, 58 Fed.Cl. 741 (Fed.Cl. 2003), reversed and remanded on other grounds, 375 F.3d 1106 (Fed. Cir. 2004), petition for cert. on other grounds, 73 U.S.L.W. 3364 (Dec. 10, 2004); Marine Hydraulics Intern., Inc. v. U.S., 43 Fed.Cl. 664 (Fed. Cl. 1999); Bean Stuyvesant LLC v. United States, 48 Fed.Cl. 303 (Fed. Cl. 2000); W & D Ships Deck Works, Inc. v. U.S., 39 Fed.Cl. 638 (Fed. Cl. 1997); Mike Hooks, Inc. v. United States, 39 Fed.Cl. 147 (Fed. Cl. 1997)).

## CONCLUSION

As explained above, the Court of Federal Claims now exercises exclusive jurisdiction over Plaintiff's bid protest. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's Complaint and the Court must transfer this case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

Respectfully submitted,

    s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

    s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

Of counsel:

Cara R. Conlin
Assistant Counsel
Department of the Navy
Military Sealift Command